**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED
OCT 29 2026
Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| JOSEPH AARON CALDARERA,<br>Plaintiff,<br><br>v.<br><br>CONSTITUTIONAL SHERIFFS AND PEACE OFFICERS ASSOCIATION, INC. (sued as "Constitutional Sheriff's Peace Officer's Association, Inc."); RICHARD MACK; RAND HENDERSON, NATHANIEL INMON, and LESLESLY WILLIAMS, in their individual capacities; MONTGOMERY COUNTY, TEXAS; and WESLEY DOOLITTLE, in his official capacity as Sheriff of Montgomery County,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:26-cv-04110<br><br>Judge Ganjei |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS HENDERSON'S AND INMON'S MOTION TO DISMISS (DOC. 10)**

Plaintiff Joseph Aaron Caldarera, proceeding *pro se*, responds to the Motion to Dismiss filed by Defendants Rand Henderson and Nathaniel Inmon in their individual capacities (Doc. 10). Plaintiff asks the Court to grant his Motion for Leave to File Second Amended Complaint, filed with this response, and to deny the Motion to Dismiss as moot. In the alternative, Plaintiff asks the Court to deny the motion as to the timely claim arising from Henderson's May 23, 2024 decision and to dismiss any remaining claim without prejudice and with leave to amend.

## I. NATURE AND STAGE OF THE PROCEEDING

This is a civil rights action under 42 U.S.C. § 1983 with supplemental claims under Texas law. Plaintiff filed his original complaint on May 22, 2026, and his First Amended Complaint ("FAC") on August 20, 2026 (Doc. 6). On September 17, 2026, Henderson and Inmon, in their individual capacities only, moved to dismiss under Rule 12(b)(6) (Doc. 10). The Court extended Plaintiff's response deadline to October 29, 2026. The motion does not address Montgomery County, Sheriff Wesley Doolittle in his official capacity, Deputy Leslesly Williams, the Constitutional Sheriffs and Peace Officers Association ("CSPOA"), or Richard Mack. On October 23, 2026, the Court entered its Scheduling Order (Doc. 28), which sets January 21, 2027 as the deadline for motions for leave to amend, and CSPOA and Mack filed a separate motion to dismiss (Doc. 27).

Consistent with this Court's Procedures, § 15(b), which recognize that pleading deficiencies "are often cured in whole or in part by a permissible amendment," Plaintiff has moved under Rule 15(a)(2) for leave to file a Second Amended Complaint ("SAC"). The proposed SAC narrows the federal claims to conduct within the limitations period and responds directly to the issues the motion raises.

## II. STATEMENT OF THE ISSUES

1. Whether the Motion to Dismiss should be denied as moot once the Court grants leave to file the SAC, which supersedes the FAC.

2. Whether the claim arising from Henderson's May 23, 2024 decision is timely, where Plaintiff sued on May 22, 2026, and the motion's limitations argument is directed to 2021 conduct.

3. Whether the motion may obtain dismissal by answering claims Plaintiff did not make, including an "admission" of primary aggression Plaintiff never made and a "right to have someone prosecuted" Plaintiff never claimed.

4. Whether *Oliver v. Collins* defeats an equal-protection claim that the protection of the law was withheld under a policy of discretionary enforcement, as opposed to a claim of a right to have another person prosecuted.

5. Whether the SAC pleads the elements of its municipal-liability and § 1983 conspiracy counts with facts rather than conclusions.

6. Whether qualified immunity warrants dismissal with prejudice, or whether a Rule 7(a) reply should be ordered if more specific facts are needed.

7. Whether, in the alternative, any claim found deficient, including the state-law claims against Inmon, should be dismissed without prejudice and with leave to amend.

## III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). The Court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor, and a *pro se* complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Limitations is an affirmative defense. Dismissal on limitations grounds is proper only when "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). District courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). That principle applies with particular force to *pro se* plaintiffs. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam).

## IV. STATEMENT OF FACTS

The facts below are taken from the proposed SAC and its exhibits.

**The policy.** Henderson was Sheriff of Montgomery County from January 1, 2017 and its final policymaker for law enforcement. (SAC ¶¶ 29, 52.) CSPOA's website, as archived in January 2016, listed "Rand Henderson," "Captain," "Montgomery County Sheriff's Office," as a signer of a CSPOA resolution, with a signature date of October 17, 2015. (SAC ¶ 48.) As a candidate in 2016, Henderson carried the endorsement of Richard

Mack, CSPOA's founder, and wrote that he "would utilize him as an expert advisor and resource." (SAC ¶ 49; SAC Exs. B, C.) At a February 2021 training that CSPOA and the Sheriff's Office presented together, Henderson said that, "having been through the vetting process with Sheriff Mack," he "went back to what I've been taught by sheriff Mack" in deciding which laws MCSO would enforce during 2020, and that using other charges to reach the same person is "just a matter of subterfuge." (SAC ¶¶ 13, 54, 57; SAC Ex. Z.)

**The 2021 arrest and the false attribution.** In February 2021, after a fight in which Plaintiff's brother struck first and Plaintiff alone had visible facial injuries, Deputies Williams and Inmon arrested Plaintiff rather than his brother. (SAC ¶¶ 61–84.) A 2019 family-violence citation that belonged to Plaintiff's brother, according to MCSO's own records, was later treated as Plaintiff's history, and a narrative of a "pattern of violent behavior" reached the Texas Education Agency, which suspended Plaintiff's teaching certificates in July 2023. (SAC ¶¶ 129–149; SAC Exs. I, K, L.) Each brother told the deputies that the other had assaulted him. Christian's requests for MCSO's protection were granted: MCSO arrested Plaintiff on Christian's word, excluded Plaintiff from his own home while leaving Christian unrestricted, and arrested Plaintiff a second time when Christian called. Plaintiff, the brother with the recorded injuries, received no protection. (SAC ¶¶ 161–164.)

**The May 23, 2024 decision.** Plaintiff asked the Sheriff's Office to investigate the deputies' conduct and the transmission of false information about him. On May 23, 2024, the Sheriff's Office, under Henderson as final policymaker, closed the complaint, stating

that "no further action is warranted." (SAC ¶¶ 155–167; SAC Exs. E, J.) Plaintiff filed this suit on May 22, 2026, within two years of that decision. (SAC ¶ 174.)

## V. SUMMARY OF THE ARGUMENT

The motion attacks a pleading that Plaintiff has asked leave to replace. The proposed SAC withdraws the claims the motion challenges most persuasively: the Fourth and First Amendment damages claims arising from the 2021 arrest, the continuing-tort theory as applied to any § 1983 claim, the medical-care and conditions claims, and the § 1985(3) claim. Because an amended complaint supersedes the prior one, the motion should be denied as moot.

Throughout, the motion recasts Plaintiff's claims and then defeats the recast version. It treats Plaintiff as having admitted that he was the aggressor who injured his brother and his mother. He admitted no such thing: the SAC pleads that Christian struck first, that Plaintiff's split lip and cut were caused by Christian's fists, and that the only acts Plaintiff concedes were defensive acts while fleeing to complete a 911 call. It treats the equal-protection claim as a demand that someone be prosecuted. The claim is that the County withheld the protection of the law from Plaintiff under a policy of nullification, which Henderson himself called the "Rosa Park Effect" and "subterfuge," in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. A motion that answers claims not made does not justify dismissing the claims that were.

What remains against Henderson is timely and adequately pleaded. His May 23, 2024 decision is a discrete act within the two-year period. *Oliver v. Collins* holds that no

one has a constitutional right to have another person prosecuted; it does not hold that a sheriff may withhold the protection of the law under a policy of selective enforcement. If any claim remains deficient, the proper remedy is a *Schultea* reply or leave to amend, not dismissal with prejudice.

## VI. ARGUMENT

### A. The motion should be denied as moot because the proposed SAC supersedes the FAC.

"An amended complaint supersedes the original complaint and renders it of no legal effect." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Once the Court grants leave, the motion will be directed at an inoperative pleading. Plaintiff has not previously amended in response to a ruling or a motion; the FAC was filed before any defendant appeared. The motion for leave is filed well before the January 21, 2027 amendment deadline (Doc. 28), no discovery has occurred, and Defendants will suffer no prejudice: they may move against the SAC, which is narrower as to them than the pleading they now challenge. Under *Foman* and *Great Plains*, leave should be granted and the motion denied as moot.

### B. The motion answers claims Plaintiff did not make.

A motion to dismiss tests the complaint as pleaded, read in the plaintiff's favor. *Iqbal*, 556 U.S. at 678; *Erickson*, 551 U.S. at 94. It cannot succeed by restating a claim in a weaker form the plaintiff did not plead and then refuting the restatement. The motion does that repeatedly. In each instance below, the motion's version omits the specific facts that make the pleaded claim work.

1. **The claimed "admission" of aggression.** *The motion's version:* Plaintiff admitted assaulting and injuring his brother and his mother, so the deputies were right and nothing that followed could be unequal. (Doc. 10) *The claim as pleaded:* Christian struck Plaintiff twice in the face with closed fists, splitting his lip and cutting him between the eyebrows, then pursued him, struck him about four more times, threw him to the floor, and took the phone as he tried to call 911. (SAC ¶ 62.) The acts Plaintiff concedes are secondary and defensive: while fleeing to complete the call, he threw nearby objects toward Christian, and a bundle of thorns struck his mother in the same flight. (SAC ¶¶ 63–65.) Plaintiff has never admitted being the primary aggressor, and he has never admitted causing his own injuries. His face did not run into his brother's hands. The deputies' own Report records Plaintiff's cut and busted lip, records "multiple scratches and scrapes" on Christian's hands, and records no injury to Christian's face or head. (SAC ¶¶ 70–75; SAC Ex. S.) Plaintiff's mother has sworn that he did not injure her. (SAC Ex. R.) The State itself abandoned the two-punch account at the plea, and its final account described thrown food and utensils, not any blow by Plaintiff. (SAC ¶¶ 119–121.) Plaintiff does not challenge the deferred adjudication, and no claim depends on its invalidity. (SAC ¶ 5.) But a plea to a reduced misdemeanor on the State's final account is not an admission that Plaintiff started the fight or caused the injuries the deputies photographed on his face.

2. **The "right to have someone prosecuted."** *The motion's version:* Plaintiff claims a constitutional right to have Christian or the deputies prosecuted. (Doc. 10.) *The claim as pleaded:* Plaintiff disclaims any such right. (SAC ¶ 167.) He claims that the County, through its final policymaker, withheld the protection of the law from him under a policy of nullification: a doctrine, learned from Mack, under which the sheriff decides which laws to enforce and for whom. Henderson described the policy in his own words: what "Sheriff Mack refers to" as the "Rosa Park Effect," and the use of other charges as "just a matter of subterfuge. . . a different way of carrying out the same threat." (SAC ¶¶ 13, 54, 58.) That policy is pleaded as a violation of the Fourteenth Amendment in three ways: equal protection, because protection was given to Christian and withheld from Plaintiff (Counts I–II); procedural due process, because the County supplied a false record that cost Plaintiff his certificates without notice or a name-clearing hearing (Count III); and substantive due process, because protection that turns on the officer's doctrine rather than the evidence is arbitrary (Count IX). *Oliver* answers a question none of these counts asks. (See Part E.)

3. **The "unbelieved explanation."** *The motion's version:* Plaintiff offered an innocent explanation, self-defense, that officers were not required to believe. (Doc. 10 (citing *District of Columbia v. Wesby*, 583 U.S. 48 (2018)).) *The facts as pleaded:* the evidence the deputies disregarded was their own. They recorded Plaintiff's facial injuries and the absence of any injury to Christian's face or head,

then credited Christian's account of "two closed-fist punches to Christian head." (SAC ¶¶ 69–78.) *Wesby* concerns a suspect's uncorroborated story, not officers' disregard of their own findings. The SAC asserts no Fourth Amendment claim (SAC ¶ 5), but these facts remain evidence of how the policy operated.

4. **The "differing characterization."** *The motion's version:* at most, the Report characterizes events differently from Plaintiff. (Doc. 10) *The facts as pleaded:* a charging narrative contradicted by the officers' own photographs and findings, maintained for eighteen months while the photographs, SD card, and recordings were left off the certified discovery log and later destroyed. (SAC ¶¶ 83, 96–101, 127.) The motion's version omits the withheld evidence, which is the part that matters.

5. **The "belief" that unconstitutional laws need not be enforced.** *The motion's version:* the conspiracy rests on Henderson's personal opinion. (Doc. 10 at ____.) *The claim as pleaded:* a documented alignment from 2015 to 2024, including the CSPOA resolution, Mack's endorsement and advisory role, Henderson's account of applying "what I've been taught by sheriff Mack," the co-presented 2021 training, and acts within the limitations period. (SAC ¶¶ 228–233.) Calling this a "belief" removes everything that makes it an agreement. (See Part F.)

6. **The "2021 arrest claim."** *The motion's version:* every claim arises from the February 2021 arrest and accrued then. (Doc. 10 at ____.) *The claim as pleaded:* the federal claims arise from the May 23, 2024 denial of protection. The 2021 acts

are pleaded as the prior wrongs from which protection was sought, as the comparison with Christian, and as evidence of the policy, not as separate claims. (SAC ¶¶ 5, 181–184.) (See Part D.)

7. **First Amendment retaliation.** The motion applied the narrow comparator exception of *Nieves v. Bartlett*, 587 U.S. 391 (2019), which applies only where probable cause existed, to a pleading that alleged its absence. That claim is now withdrawn, but the error shows the same pattern: the motion answered a question the pleading did not ask.

Plaintiff does not suggest that every argument in the motion is of this kind. The limitations rule of *Wallace v. Kato* and the election-of-remedies rule of § 101.106(f) are real, and the SAC addresses them directly. (Parts C, D, and H.) But where the motion prevails only against a version of the claim Plaintiff did not plead, it provides no ground for dismissal.

**C. Plaintiff withdraws the claims the motion persuasively challenges.**

Plaintiff does not ask the Court to spend its time on claims he no longer presses. The SAC makes the following changes.

1. **2021 damages claims.** A Fourth Amendment false-arrest claim accrues at the time of the arrest. *Wallace v. Kato*, 549 U.S. 384, 388–90 (2007). The SAC does not seek damages for the February 2021 arrests, detention, or prosecution and asserts no Fourth or First Amendment claim. (SAC ¶¶ 5, 34.)

2. **Continuing tort.** Federal law governs the accrual of a § 1983 claim. *Wallace*, 549 U.S. at 388. The SAC does not rely on the Texas continuing-tort doctrine, or on any tolling doctrine, for any § 1983 claim. It invokes tolling only for two state-law claims: intentional infliction of emotional distress and injurious falsehood. (SAC ¶¶ 178–179.)

3. **Section 1985(3), medical care, and conditions of confinement.** The SAC omits those claims.

4. **Intentional infliction of emotional distress.** The SAC does not assert that claim against Henderson. (SAC Count V.)

The 2021 events remain relevant. A statute of limitations does not bar a plaintiff "from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The arrest shows how the policy operated; it is pleaded as evidence and as a causal predicate of the later denial of protection, not as a separate claim for damages. (SAC ¶¶ 60, 180–181.)

**D. The claim arising from the May 23, 2024 decision is timely.**

Section 1983 claims in Texas borrow the two-year personal-injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); Tex. Civ. Prac. & Rem. Code § 16.003(a). A claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). "Each discrete discriminatory act starts a new clock." *Morgan*, 536 U.S. at 113.

The May 23, 2024 decision closing Plaintiff's complaint was a discrete decision, made on that date, in response to Plaintiff's request. It was not the inevitable consequence of the 2021 arrest; it was a new decision by the final policymaker, made with MCSO's records before him. (SAC ¶¶ 157–159.) Plaintiff sued on May 22, 2026, within two years. The motion's limitations argument is directed to 2021 conduct, and its own description of the equal-protection claim against Henderson places that claim on the May 23, 2024 letter. Because a bar is not "evident from the plaintiff's pleadings" as to that act, limitations cannot support dismissal of the claim based on it. *Jones*, 339 F.3d at 366.

The 2021 acts do not make the claim stale; they explain it. A denial of equal protection presupposes a prior wrong from which protection is sought. The 2021 acts were that wrong. In 2021 Plaintiff knew he had been wrongly arrested, but he did not know, and had no reason to know, that he would be denied the equal protection of the laws under a County policy, because no denial had yet occurred. The remedies Texas law provides were still open to him. Official oppression, tampering, and obstruction by deputies are crimes, Tex. Penal Code §§ 37.09, 37.10, 39.03, and a person who reports them, with supporting records, to the office that employs and supervises the deputies reasonably expects that office to act. Plaintiff did so in November 2023. Only on May 23, 2024, when the final policymaker closed the complaint despite MCSO's own contrary records, was protection denied, and only then could the 2021 acts be recognized as the operation of a policy. (SAC ¶¶ 181–184.) The claim accrued then. *Piotrowski*, 237 F.3d at 576.

**E. Oliver v. Collins does not defeat the equal-protection claim.**

The motion relies on *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990), for the rule that there is no constitutional right to have someone criminally prosecuted. Plaintiff accepts that rule. The SAC does not claim a right to have anyone investigated or charged. (SAC ¶ 167.)

The motion's reliance on *Oliver* depends on recasting the claim. The claim is a deprivation of the equal protection of the laws, and of due process, by a policy of nullification exemplified by the "Rosa Park Effect" and the practice of "subterfuge" Henderson described. (SAC ¶¶ 13, 54, 58.) It is not a claim to any particular prosecution.

The claim is different. It is that the protection of the law was withheld from Plaintiff under a policy by which the Sheriff, following a private organization's doctrine, decided whose rights the office would enforce. "The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989). The Fifth Circuit has applied that principle to law-enforcement policies. *Shipp v. McMahon*, 234 F.3d 907, 914 (5th Cir. 2000); *Beltran v. City of El Paso*, 367 F.3d 299, 304–05 (5th Cir. 2004). Under *Beltran*, the plaintiff must plead a policy, practice, or custom of providing less protection, a discriminatory purpose, and injury caused by the policy. *Id.* Where no group classification is involved, the Clause also protects a "class of one" who has been "intentionally treated differently from others similarly situated"

without a rational basis. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

The SAC pleads each element with facts, not labels. It identifies the policy and its source: the 2015 resolution, Henderson's 2016 endorsement and his written statements that a sheriff may decline to enforce laws he deems unconstitutional, and his own account in February 2021 of applying what Mack taught him and of reaching people through "subterfuge." (SAC ¶¶ 13, 48–59.) It alleges that the May 23, 2024 decision was made under Henderson as the County's final policymaker. (SAC ¶ 157); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). And it pleads purpose through the factors of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266–68 (1977): the historical background, the sequence of events, and departures from normal procedure. (SAC ¶ 191.) The SAC also identifies a comparator: Plaintiff's brother Christian. Each brother reported to MCSO that the other had assaulted him, and each was owed the protection Texas law requires for "any potential victim of family violence." Tex. Code Crim. Proc. art. 5.04(a). MCSO granted Christian's requests, though the injuries it recorded contradicted him, and denied Plaintiff's, though the injuries it recorded supported him, through the May 23, 2024 decision. The Report itself records that Christian "hates gay people." (SAC ¶¶ 161–164, 194.) That is differential treatment of a similarly situated person with no rational law-enforcement explanation. *Olech*, 528 U.S. at 564. Whether Henderson acted with a discriminatory purpose is a question of fact that cannot be resolved on a motion to dismiss.

**F. The municipal-liability and conspiracy counts plead each element with facts.**

The SAC sets out, under separate subheadings, each element of these counts, the facts supporting it, and the paragraphs where those facts are pleaded.

1. **Monell (Count II).** A policymaker, an official policy, and a violation whose moving force is the policy. *Piotrowski*, 237 F.3d at 578. The SAC pleads that Henderson was the County's final policymaker for law enforcement, *Colle v. Brazos Cnty.*, 981 F.2d 237, 244 (5th Cir. 1993). It pleads the policy through dated, sourced facts from 2015, 2016, 2020, and 2021, in Henderson's own words. And it pleads that the policy was applied to Plaintiff by the policymaker's own office on May 23, 2024. (SAC ¶¶ 204–210.)

2. **Section 1983 conspiracy (Count IV).** An agreement between private and public actors to commit an illegal act, and an actual deprivation in furtherance of it. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004). The SAC identifies the parties, the object of the agreement, the 2015 resolution, the 2016 endorsement and advisory commitment, Henderson's statement that he applied "what I've been taught by sheriff Mack," the co-presented 2021 training, and the overt acts within the limitations period. (SAC ¶¶ 228–233.)

These are the "operative facts" *Priester* requires, not "[t]hreadbare recitals of the elements." *Iqbal*, 556 U.S. at 678. Neither count is conclusory.

**G. Qualified immunity does not warrant dismissal with prejudice.**

Qualified immunity is unavailable to Montgomery County and to Sheriff Doolittle in his official capacity. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). The motion therefore cannot dispose of the claims against the County or the claims for declaratory and injunctive relief.

As to Henderson individually, the right at issue was clearly established long before May 2024. *DeShaney* (1989), *Shipp* (2000), and *Beltran* (2004) gave fair notice that a law-enforcement official may not intentionally withhold protection on a discriminatory basis. (SAC ¶ 195.) The defense turns on what Henderson did and why, matters the SAC pleads in detail. If the Court concludes that more specific facts are needed to resolve the defense, the Fifth Circuit's settled procedure is to order a Rule 7(a) reply tailored to the defense, not to dismiss. *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995) (en banc).

**H. Deputy Inmon.**

The SAC does not reassert the 2021 damages claims against Inmon under § 1983. It names him in the § 1983 conspiracy count only as a participant in an agreement whose overt acts within the limitations period, including the May 23, 2024 decision and the continued maintenance of the false attribution, injured Plaintiff. (SAC ¶¶ 171–172, 223–227.) In this Circuit, "the actionable civil injury to a plaintiff results from the overt acts of the defendants," and the claim accrues as to each overt act. *Helton v. Clements*, 832 F.2d

332, 334–35 (5th Cir. 1987). Whether Inmon's participation is adequately pleaded should be decided against the SAC, not the FAC.

The SAC also pleads three state-law claims against Inmon: intentional infliction of emotional distress (Count V), injurious falsehood (Count VI), and civil conspiracy (Count VII). (SAC ¶¶ 234–250, 241–248, 251–257.) The injurious-falsehood count pleads each element with facts: publication of the false narrative and of Christian's 2019 history as Plaintiff's; malice shown by the deputies' own photographs and by MCSO records that distinguished the brothers by name and date of birth; the absence of privilege; and special damages in the loss of Plaintiff's teaching income after TEA relied on the statements. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). The civil-conspiracy count sets out each element under *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019).

Tolling is invoked only for the intentional-infliction and injurious-falsehood claims, under the discovery rule, fraudulent concealment, and the continuing-tort doctrine; civil conspiracy takes the limitations period of those torts. (SAC ¶ 179.) The injurious-falsehood claim also relates back to the original complaint, filed within two years after Plaintiff learned in November 2024 what had been conveyed to TEA. Fed. R. Civ. P. 15(c)(1)(B). (SAC ¶ 185.)

Plaintiff recognizes that Tex. Civ. Prac. & Rem. Code § 101.106(f), *Franka v. Velasquez*, 332 S.W.3d 367, 381–85 (Tex. 2011), and *Frias v. Hernandez*, 142 F.4th 803 (5th Cir. 2025), bear on these claims. The SAC alleges that conveying another person's

criminal history to a licensing agency as the history of the person arrested is not conduct a deputy is employed to perform. (SAC ¶ 248.) Under § 101.106(f), the remedy is substitution of the governmental unit or dismissal, not an adjudication of the merits. Plaintiff asks that any ruling on these claims be made on the SAC and, if adverse, be without prejudice.

**I. In the alternative, any dismissal should be without prejudice and with leave to amend.**

If the Court reaches the merits of the FAC and finds any claim deficient, Plaintiff asks that dismissal be without prejudice and with leave to amend. The defects the motion identifies concern the specificity of the facts pleaded, not a legal bar that no amendment could cure. *Great Plains*, 313 F.3d at 329; *Brewster*, 587 F.3d at 767–68.

## VII. CONCLUSION

Plaintiff respectfully asks the Court to (1) grant his Motion for Leave to File Second Amended Complaint and deny the Motion to Dismiss (Doc. 10) as moot; or, in the alternative, (2) deny the motion as to the claim arising from Henderson's May 23, 2024 decision, order a Rule 7(a) reply under *Schultea* if the Court deems one necessary, and dismiss any other claim without prejudice and with leave to amend.

Respectfully submitted,

Joseph Aaron Caldarera, *pro se*
10680 Westbrae Pkwy, P301
Houston, TX 77031
(936) 510-3221

lt.caldarera@gmail.com

Dated: 10/29, 2026

## CERTIFICATE OF WORD COUNT

This response contains 4,656 words, excluding the caption, signature block, certificates, exhibits, and proposed order.

Joseph Aaron Caldarera

## CERTIFICATE OF SERVICE

I certify that on October 29, 2026, I filed this response and the proposed order with the Clerk and served a true copy on Daniel Plake, counsel for Defendants Henderson, Inmon, Montgomery County, and Sheriff Doolittle, 501 N. Thompson St., Suite 300, Conroe, TX 77301 (Daniel.plake@mctx.org), and on C.J. Grisham, GFA Law, PLLC, counsel for Defendants CSPOA and Mack, 3809 S. General Bruce Dr., Suite 103-101, Temple, TX 76502 (cj@gfalaw.us), by email and first-class mail.

Joseph Aaron Caldarera