**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSEPH AARON CALDARERA, Plaintiff, | § § § | |
| v. | § | CIVIL ACTION NO. 4:26-cv-04110 |
| CONSTITUTIONAL SHERIFFS AND PEACE OFFICERS ASSOCIATION, INC., *et al.*, Defendants. | § § § § § | |

**DEFENDANTS CONSTITUTIONAL SHERIFFS AND PEACE OFFICERS ASSOCIATION, INC. AND RICHARD MACK'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (DOC. 35)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii
I. NATURE AND STAGE OF THE PROCEEDING .......... 1
II. STATEMENT OF THE ISSUES .......... 2
III. STATEMENT OF FACTS .......... 2
IV. STANDARD OF REVIEW .......... 3
V. SUMMARY OF THE ARGUMENT .......... 3
VI. ARGUMENT .......... 4
A. Plaintiff's own allegations remove CSPOA from every timely act. .......... 4
B. Count IV, the § 1983 conspiracy, is futile as to the CSPOA Defendants. .......... 5
1. The only timely overt acts belong to Henderson, and no fact connects the CSPOA Defendants to them. .......... 6

2. Without a plausibly pleaded agreement, the CSPOA Defendants are not state actors. .......... 8

3. The "agreement" is inferred entirely from protected speech and association. .......... 8

4. The SAC pleads no actual deprivation within the limitations period. .......... 10

C. Count V, intentional infliction of emotional distress, is futile as to the CSPOA Defendants. .......... 11

1. Count V is time-barred on the face of the SAC. .......... 11

2. The First Amendment bars IIED liability for the speech Plaintiff alleges. .......... 12

3. The SAC pleads no extreme and outrageous conduct by the CSPOA Defendants. .......... 12

D. Count VII, Texas civil conspiracy, is futile as to the CSPOA Defendants. .......... 13

1. Both underlying torts are time-barred, so the conspiracy claim is too. .......... 13

2. The SAC pleads no meeting of the minds on any tort. .......... 14

E. The Court still lacks personal jurisdiction over the CSPOA Defendants. .......... 15

1. Plaintiff concedes that the conduct he sues on postdates every alleged contact. .......... 16

2. Many of the listed "contacts" are not the CSPOA Defendants' contacts at all. .......... 16

3. An alleged conspiracy with a Texas official does not supply jurisdiction. .......... 17

4. Jurisdictional discovery is not warranted. .......... 18

F. The Court should decline Plaintiff's requested Rule 11 rulings and should decide Doc. 27. .......... 18

VII. CONCLUSION AND PRAYER .......... 20

# TABLE OF AUTHORITIES

## Cases

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019) .......13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......3, 5

*Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005) .......8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......7

*Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255 (2017) .......15, 18

*Calder v. Jones*, 465 U.S. 783 (1984) .......18

*Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998) .......11, 14

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) .......5, 10

*Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814 (Tex. 2005) .......11

*CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419 (2016) .......19

*Dean v. Riser*, 240 F.3d 505 (5th Cir. 2001) .......20

*Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1 (5th Cir. 2004) .......17

*Dennis v. Sparks*, 449 U.S. 24 (1980) .......8

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) .......10

*Foman v. Davis*, 371 U.S. 178 (1962) .......3

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021) .......15, 16

*Helton v. Clements*, 832 F.2d 332 (5th Cir. 1987) .......7

*Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) .......12

*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021) .......17

*Jones v. Alcoa, Inc.*, 339 F.3d 359 (5th Cir. 2003) .......3

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) .......14

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) .......10

*Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368 (5th Cir. 2014) .......3

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429 (5th Cir. 2014) .......18

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)........................................9

*Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex. 1995)...........................18

*Oliver v. Collins*, 914 F.2d 56 (5th Cir. 1990)........................................................10

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865 (5th Cir. 2001)..........................................................................................................18

*Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004)...............................5, 6, 8

*Rich v. Palko*, 920 F.3d 288 (5th Cir. 2019).......................................................7, 10

*Snyder v. Phelps*, 562 U.S. 443 (2011)...........................................................12, 14

*Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000) ..................................3

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex. 1996) ..................................................15

*Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995)..............................14

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993)..........................................12, 13

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004)......14

*Walden v. Fiore*, 571 U.S. 277 (2014)....................................................................16

*Wisconsin v. Mitchell*, 508 U.S. 476 (1993) ..........................................................9

**Statutes**

42 U.S.C. § 1983 .........................................................................................3, 5, 10

42 U.S.C. § 1985(3) .................................................................................................1

42 U.S.C. § 1988(b) ...........................................................................19, 20, 21

Tex. Civ. Prac. & Rem. Code § 16.003(a)..........................................................11

**Rules**

Fed. R. Civ. P. 11 ...........................................................1, 2, 3, 18, 19, 20

Fed. R. Civ. P. 12(b)(2).....................................................................................1, 20

Fed. R. Civ. P. 12(b)(6).....................................................................................3, 20

Fed. R. Civ. P. 12(h)(1).............................................................................................1

Fed. R. Civ. P. 15(a)(3)...........................................................................................21

Fed. R. Civ. P. 54(d)(2)......................................................................................20, 21

Fed. R. Evid. 404(a)(1) .......... 9
Fed. R. Evid. 408(a) .......... 19

**TO THE HONORABLE NICHOLAS J. GANJEI, UNITED STATES DISTRICT JUDGE:**

Defendants Constitutional Sheriffs and Peace Officers Association, Inc. ("CSPOA") and Richard Mack (together, the "CSPOA Defendants") oppose Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 35) to the extent it seeks to assert any claim against them. Amendment as to them is futile. The CSPOA Defendants continue to appear subject to their objection to personal jurisdiction. Fed. R. Civ. P. 12(b)(2), (h)(1); Doc. 27 at 1 n.2. This response addresses only the claims the proposed pleading asserts against the CSPOA Defendants and does not ask the Court to deny leave as to claims against other parties.

## I. NATURE AND STAGE OF THE PROCEEDING

Plaintiff sued on May 22, 2026 and filed his First Amended Complaint (Doc. 6) ("FAC") on August 20, 2026. Only Count VII of the FAC, under 42 U.S.C. § 1985(3), named the CSPOA Defendants. Doc. 35 at 3. They were served October 16, 2026. On October 23, 2026, they moved to dismiss under Rules 12(b)(2) and 12(b)(6) (Doc. 27) and served Plaintiff with a Rule 11 motion and safe-harbor letter. Doc. 35 at 3-4. On October 29, 2026, Plaintiff withdrew Count VII "as to every Defendant" and moved for leave to file a Second Amended Complaint (Doc. 35 at 28-96) ("SAC"). *Id.* at 1, 8. The Montgomery County Defendants also oppose leave. Doc. 38. No discovery has occurred. Doc. 35 at 4.

## II. STATEMENT OF THE ISSUES

1. Whether Counts IV, V, and VII fail to state a claim against the CSPOA Defendants, making amendment futile.

2. Whether the Court lacks personal jurisdiction over the CSPOA Defendants, and whether jurisdictional discovery is warranted.

3. Whether the Court should decline Plaintiff's requested Rule 11 rulings and decide the CSPOA Defendants' pending motion to dismiss (Doc. 27).

## III. STATEMENT OF FACTS

These facts are from the SAC and its attachments, assumed true only for this response. CSPOA is an Arizona nonprofit "formed May 27, 2020" and "administratively dissolved in December 2021." SAC ¶ 30. Mr. Mack is a private citizen. SAC ¶ 225. The SAC connects the CSPOA Defendants to Montgomery County through a 2015 resolution signed by former Sheriff Rand Henderson, Mr. Mack's 2016 endorsement of Henderson's campaign, and a February 26-27, 2021 seminar held after Plaintiff's arrest. SAC ¶¶ 10-14, 168, 230.

Plaintiff was arrested by Defendants Williams and Inmon in February 2021, and he alleges exclusion from his home and other mistreatment through May 2021. SAC ¶¶ 5, 162, 237. The Texas Education Agency ("TEA") suspended his certificates on July 21, 2023, based on information he alleges MCSO conveyed. SAC ¶¶ 129-132, 246. His own exhibits show that TEA notified him of its investigation

in November 2022 and of its decision in July 2023. Doc. 35-1 at 58-65, 79. His November 1, 2023 internal-affairs complaint about that information was closed by Henderson on May 23, 2024. SAC ¶¶ 155-158, 172. Plaintiff limits his federal damages to overt acts on or after May 22, 2024. SAC ¶¶ 22, 177.

## IV. STANDARD OF REVIEW

Leave to amend is not automatic. A court may deny leave when amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if the amended complaint would fail to state a claim upon which relief could be granted, measured by the same standard that governs Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000); *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378-79 (5th Cir. 2014). The proposed pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the Court does not accept legal conclusions or "[t]hreadbare recitals of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Limitations supports dismissal when it is evident from the pleading. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Amendment is also futile as to a defendant over whom the Court lacks personal jurisdiction.

## V. SUMMARY OF THE ARGUMENT

Faced with a Rule 11 motion, Plaintiff withdrew the only claim that named the CSPOA Defendants, then named them in three new counts: a § 1983 conspiracy

(Count IV), intentional infliction of emotional distress (Count V), and Texas civil conspiracy (Count VII). The labels are new; the facts are not. From a 2015 resolution, a 2016 endorsement, and a 2021 seminar, Plaintiff asks the Court to infer a years-long agreement to injure a man the CSPOA Defendants are not alleged to have known existed.

Each count fails. The only timely overt acts are Henderson's 2024 closing of a complaint and MCSO's maintenance of its records. No fact connects the CSPOA Defendants to either, CSPOA was dissolved years earlier, and there is no right to an accurate police record anyway. The state-law counts expired before suit. And the only conduct alleged against the CSPOA Defendants is protected speech.

Personal jurisdiction is still missing. Plaintiff concedes every alleged Texas contact precedes the conduct he sues on, SAC ¶ 22, and many are not the CSPOA Defendants' contacts at all. Leave should be denied as to them and Doc. 27 granted.

## VI. ARGUMENT

### A. Plaintiff's own allegations remove CSPOA from every timely act.

The CSPOA entity Plaintiff sued was "formed May 27, 2020" and "administratively dissolved in December 2021." SAC ¶ 30. Those dates undercut his own pleading.

First, the entity Plaintiff sued did not exist in 2015 or 2016. It cannot have been a party to an "agreement" evidenced by a 2015 resolution or a 2016

endorsement, SAC ¶¶ 10-12, 168, 230, and those events cannot be its Texas contacts. Second, the entity was dissolved in December 2021. Plaintiff seeks federal damages only for overt acts on or after May 22, 2024. SAC ¶¶ 22, 177. Plaintiff pleads that a dissolved Arizona corporation may be sued "for acts taken before dissolution." SAC ¶ 30. He pleads no act by CSPOA between May 2020 and December 2021 that injured him, and nothing CSPOA did before its dissolution can be the timely overt act his claims now require. The SAC's fallback, that CSPOA "has continued to operate under the CSPOA name" on "information and belief," SAC ¶ 30, identifies no conduct, no date, and no person. It is a conclusion, not a fact. *Iqbal*, 556 U.S. at 678.

### B. Count IV, the § 1983 conspiracy, is futile as to the CSPOA Defendants.

A § 1983 conspiracy claim against private parties requires facts showing (1) an agreement between the private and public defendants to commit an illegal act and (2) an actual deprivation of constitutional rights in furtherance of that agreement. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester*, 354 F.3d at 420. Plaintiff recites this standard, SAC ¶ 228, and fails it.

### 1. The only timely overt acts belong to Henderson, and no fact connects the CSPOA Defendants to them.

Plaintiff has abandoned any damages claim based on the February 2021 arrests. SAC ¶¶ 5, 34, 181. He seeks damages under Count IV "only for injury caused by overt acts on or after May 22, 2024." SAC ¶ 177. He identifies two: "Henderson's May 23, 2024 refusal and the continued maintenance and dissemination of the false attribution." SAC ¶¶ 172, 226, 232.

The SAC alleges no fact connecting the CSPOA Defendants to either one. It does not allege that Mr. Mack or anyone at CSPOA knew Plaintiff existed before this lawsuit, knew of his November 2023 internal-affairs complaint, communicated with Henderson or any MCSO employee about him, or had any role in MCSO's records or the TEA proceeding. The first contact between Mr. Mack and Plaintiff the SAC identifies is a September 5, 2026 letter answering Plaintiff's request to waive service of this suit. SAC ¶ 173. In *Priester*, allegations that state actors "encouraged and/or allowed" a private party's conduct did not plead an agreement between them. 354 F.3d at 420. The SAC alleges far less: not that the CSPOA Defendants encouraged anything done to Plaintiff, but only that a sheriff once admired their views.

What Plaintiff pleads instead is an agreement to "carry out in Montgomery County the doctrine described above." SAC ¶¶ 224, 229. The "doctrine" is a set of views about the constitutional role of county sheriffs. SAC ¶¶ 38-46. Every fact

offered to show the "agreement" is an instance of shared views or public association: a resolution Henderson signed in 2015, an endorsement Mr. Mack gave Henderson's campaign in 2016, Henderson's 2016 statement that he would consult Mr. Mack, Henderson's 2021 statement that he had applied what he had been "taught," and a seminar at which both men spoke. SAC ¶¶ 168, 230. Those facts show, at most, that Henderson agreed with Mr. Mack's opinions. Agreement with an opinion is not an agreement to commit an illegal or civilly liable act. Allegations that are "merely consistent with" an unlawful agreement do not plead one. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The leap from a sheriff's admiration in 2016 and 2021 to the speaker's advance agreement to whatever the sheriff decided in 2024 about a complaint the speaker never heard of is speculation, not a plausible inference.

Nor can the "continued maintenance and dissemination" of MCSO records rescue the claim. Maintaining a record is the continuing consequence of an earlier act, not a new overt act. In a civil-rights conspiracy, "the actionable civil injury to a plaintiff results from the overt acts of the defendants, not from the mere continuation of a conspiracy." *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987). Plaintiff alleges the "false attribution" reached TEA before TEA's July 21, 2023 order. SAC ¶¶ 129-132, 246. Its continued presence in MCSO's files is the effect of that act. Moreover, there is no constitutional right to an accurate after-the-fact police report, and the Fifth Circuit has declined to treat an allegedly inaccurate report as a

continuing constitutional violation. *Rich v. Palko*, 920 F.3d 288, 297-98 (5th Cir. 2019); *see* Doc. 38 at 4. In any event, the SAC does not allege that the CSPOA Defendants ever possessed, maintained, or disseminated any MCSO record. Since Henderson left office, SAC ¶ 29, the records have been maintained by Sheriff Doolittle, against whom Plaintiff "alleges no personal wrongdoing." SAC ¶ 28.

**2. Without a plausibly pleaded agreement, the CSPOA Defendants are not state actors.**

Mr. Mack and CSPOA are private parties. SAC ¶ 225. A private party acts under color of state law only if he is "a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *see Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). Plaintiff's theory of state action is the conspiracy itself. SAC ¶¶ 30-31, 225. Because the SAC pleads no agreement reaching the conduct that injured Plaintiff, it pleads no joint action, and the CSPOA Defendants did not act under color of state law. *Priester*, 354 F.3d at 420-21.

**3. The "agreement" is inferred entirely from protected speech and association.**

The SAC attributes no act to Mr. Mack or CSPOA other than writing, speaking, endorsing, teaching, and publishing recordings. SAC ¶¶ 11, 16-17, 41-42, 45, 230. Plaintiff's own exhibit, the TCOLE memorandum, concluded that the CSPOA material was "political discourse rather than law enforcement training." SAC ¶ 43. Advocacy of political and legal views, and association with public

officials who share them, are protected by the First Amendment, and civil liability may not be imposed on a speaker for the conduct of others who heard him unless he "held a specific intent to further" their illegal aims. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982). The SAC pleads no such intent. It pleads that Mr. Mack taught a doctrine and that Henderson, years later, applied it as he saw fit.

Plaintiff responds that he offers the speech only "as evidence of agreement and intent." Doc. 35 at 5, 15-16 (citing *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)). *Mitchell* permits a factfinder to consider a defendant's speech as evidence of the motive for an act that is itself unprotected, there a physical assault, which "is not by any stretch of the imagination expressive conduct protected by the First Amendment." 508 U.S. at 484, 489. Here the speech is not evidence of some separate unprotected act by the CSPOA Defendants. There is no such act. The speech is the entire case against them. Relabeling it "evidence" does not change what Plaintiff seeks to impose liability for.

Plaintiff's request that the Court judicially notice a 2025 Utah Supreme Court opinion recounting findings about Mr. Mack's conduct as a Provo police officer in a 1985 prosecution fares no better. Doc. 35 at 13-14. Plaintiff concedes the findings are not offered for their truth. *Id.* at 14. Its only function, then, is to suggest that Mr. Mack is the sort of person who would conspire, the inference Federal Rule of Evidence 404(a)(1) forbids.

#### 4. The SAC pleads no actual deprivation within the limitations period.

A § 1983 conspiracy requires an actual deprivation of a constitutional right. *Cinel*, 15 F.3d at 1343. The timely deprivation Plaintiff identifies is MCSO's May 23, 2024 decision to take no further action on his complaint against two deputies, in which he asked MCSO to pursue official-oppression and tampering offenses. SAC ¶¶ 155-158. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Plaintiff's effort to restyle the refusal as a selective denial of "protective services" under footnote 3 of *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197 n.3 (1989), does not change what he asked MCSO to do or what it declined to do. And the records themselves supply no deprivation. *Rich*, 920 F.3d at 297-98. The CSPOA Defendants also join the arguments of the Montgomery County Defendants, Docs. 10, 36, 37, and 38, to the extent they show that Counts I and III state no claim or are time-barred. If there is no underlying deprivation, Count IV fails as to every defendant.

### C. Count V, intentional infliction of emotional distress, is futile as to the CSPOA Defendants.

### 1. Count V is time-barred on the face of the SAC.

Intentional infliction of emotional distress carries a two-year limitations period in Texas. Tex. Civ. Prac. & Rem. Code § 16.003(a). Plaintiff sued on May 22, 2026. SAC ¶ 174. Count V "rests on" Plaintiff's "exclusion from his own home, the second arrest, and the months without shoes." SAC ¶ 239. All of that occurred in February through May 2021. SAC ¶¶ 5, 162, 237. The conduct attributed to the CSPOA Defendants, "promoting and implementing" a doctrine, SAC ¶ 235, is dated no later than the February 2021 seminar as to Montgomery County, and Plaintiff alleges no CSPOA conduct of any kind after its December 2021 dissolution. SAC ¶ 30.

Plaintiff invokes the continuing-tort doctrine, the discovery rule, and fraudulent concealment. SAC ¶¶ 179, 238. None helps him. The Supreme Court of Texas has "neither endorsed nor addressed" the continuing-tort doctrine. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.8 (Tex. 2005). Where applied, it extends accrual only until the conduct stops, here in 2021. Continuing emotional effects are not continuing conduct. The discovery rule defers accrual only until the plaintiff knows or should know of his injury and that it was likely caused by the wrongful acts of another. *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998). A person who is arrested, excluded from his home, and left without shoes knows of that injury, and who caused it, when it happens. Fraudulent concealment requires

concealment by the defendant, and the SAC attributes the concealment of photographs, recordings, and records to MCSO, not to the CSPOA Defendants. SAC ¶ 179.

### 2. The First Amendment bars IIED liability for the speech Plaintiff alleges.

The only conduct Count V attributes to the CSPOA Defendants is "promoting" a doctrine about the powers of county sheriffs. SAC ¶ 235. Speech on matters of public concern, including the proper role of law enforcement, cannot support liability for intentional infliction of emotional distress, however offensive the listener finds it. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011). Plaintiff does not allege that either CSPOA Defendant ever said anything about him or to him.

### 3. The SAC pleads no extreme and outrageous conduct by the CSPOA Defendants.

Intentional infliction of emotional distress is a "gap-filler" tort, reserved for the rare case in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized remedy. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Plaintiff himself pleads Count V "in the alternative" for that reason. SAC ¶ 239. Lecturing to an audience of peace officers about constitutional theory is not conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). The outrageous conduct the SAC

actually describes, the arrest, the exclusion from the residence, and the shoes, is attributed to Williams and Inmon. SAC ¶¶ 236-237.

### D. Count VII, Texas civil conspiracy, is futile as to the CSPOA Defendants.

#### 1. Both underlying torts are time-barred, so the conspiracy claim is too.

Civil conspiracy is a derivative tort. It is not an independent cause of action, and it takes the limitations period of the underlying tort. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 138, 140-42 (Tex. 2019). Plaintiff agrees. SAC ¶¶ 179, 251. The underlying torts are IIED (Count V) and injurious falsehood (Count VI). SAC ¶ 251.

The IIED claim is time-barred for the reasons stated above. The injurious-falsehood claim is time-barred on Plaintiff's own allegations and exhibits. Count VI rests on statements conveyed to TEA that resulted in the July 21, 2023 suspension of Plaintiff's certificates. SAC ¶¶ 129-132, 246. TEA notified Plaintiff of its investigation in November 2022 and of its decision in July 2023. Doc. 35-1 at 58-65, 79; *see* Doc. 38 at 3. On November 1, 2023, he filed a report with MCSO internal affairs seeking charges against Williams and Inmon "based on their transmission of false information to the TEA." SAC ¶ 156. Even under the discovery rule, a claim accrues when the plaintiff knows or should know of the injury and that it was likely caused by the wrongful acts of another. *Childs*, 974 S.W.2d at 40. By November 1,

2023 at the latest, Plaintiff knew of the suspension, knew that false information had been sent to TEA, and knew who he believed sent it. The two-year period expired no later than November 1, 2025, more than six months before he sued.

Plaintiff's allegation that he learned in November 2024 additional detail about the "prior history" TEA relied on, SAC ¶ 139, does not delay accrual. Once a plaintiff knows of his injury and its likely wrongful cause, limitations runs even if he has not yet learned every fact about the wrong. *See Childs*, 974 S.W.2d at 40. To the extent the November 2024 allegation suggests Plaintiff did not know of the TEA proceeding until then, his own exhibits contradict it, and where an exhibit contradicts an allegation, the exhibit controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). Because both predicate torts are barred, so is the conspiracy. Independently, because the First Amendment bars the IIED claim against the CSPOA Defendants, *supra* Part VI.C.2, Plaintiff "cannot recover for civil conspiracy based on" that tort either. *Snyder*, 562 U.S. at 460.

**2. The SAC pleads no meeting of the minds on any tort.**

A joint intent to engage in conduct that later causes injury is not enough. "[C]ivil conspiracy requires specific intent" to agree "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (quoting *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)); *see Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.

1996). The object Plaintiff assigns to the conspiracy is to "withhold the protection of the law" from those outside the sheriff's "constituents." SAC ¶ 253. The torts are a deputy's emotional mistreatment of Plaintiff in 2021 and the transmission of another man's record to TEA. SAC ¶¶ 237, 242-246, 255. The SAC does not allege that Mr. Mack or CSPOA knew of, intended, or agreed to either one. For the meeting-of-the-minds element, Plaintiff simply refers back to the facts he pleaded under Count IV, SAC ¶ 254, and those facts show shared opinions, not a shared intent to injure him. *Supra* Part VI.B.1.

### E. The Court still lacks personal jurisdiction over the CSPOA Defendants.

The SAC adds seventeen paragraphs on personal jurisdiction. SAC ¶¶ 9-25. They describe more Texas events, but they do not cure the problem Doc. 27 identified: Plaintiff's claims do not arise out of or relate to anything the CSPOA Defendants did in Texas. Doc. 27 at 6-8. Specific jurisdiction is claim-specific. There must be "an affiliation between the forum and the underlying controversy," and without one, jurisdiction is lacking "regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262, 264 (2017). The phrase "relate to" "does not mean anything goes" and "incorporates real limits." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

### 1. Plaintiff concedes that the conduct he sues on postdates every alleged contact.

Plaintiff asserts that "[e]very contact described above, from the 2015 resolution through the April 2023 training, precedes that refusal." SAC ¶ 22. That is offered as a strength. It is the opposite. The controversy Plaintiff now pleads is Henderson's 2024 handling of an internal-affairs complaint and MCSO's maintenance of its own records. Neither CSPOA Defendant took part in either one. The only thing linking the seminars and endorsements to those events is Henderson's alleged decision, years later, to apply what he had learned. The relevant contacts must be ones the "defendant himself" creates, and neither the plaintiff nor a third party can be the only link between the defendant and the forum. *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014). Henderson's choices are Henderson's contacts. *Ford* does not help Plaintiff. Its holding rested on the defendant's own systematic service of a market for the very product that injured the plaintiffs in the forum. 592 U.S. at 365. There is no comparable link here between any CSPOA activity and the 2024 refusal.

### 2. Many of the listed "contacts" are not the CSPOA Defendants' contacts at all.

Much of what the SAC lists was done by someone else. The 2015 resolution was signed by Henderson and displayed on a website, years before the entity Plaintiff sued was formed. SAC ¶¶ 10, 30. The 2016 endorsement appeared on Henderson's

own campaign website. SAC ¶ 11. The 2016 questionnaire is Henderson's statement. SAC ¶ 12. The 2020 COVID decisions were MCSO's. SAC ¶ 13. TCOLE's 2023 letter to Mr. Mack is the forum reaching out to the defendant, not the reverse. SAC ¶ 19. The NBC 5 broadcasts are the work of a television station. SAC ¶ 20. And the posting of recordings on a YouTube channel that anyone may view anywhere does not show conduct aimed at Texas. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320-22 (5th Cir. 2021) (content "visible in Texas" does not suffice; "[t]o target every user everywhere . . . is to target no place at all"). Of the remaining items, the only event involving both Mr. Mack and Montgomery County is the February 26-27, 2021 seminar, which Plaintiff concedes took place after the arrest and which he no longer claims caused any injury for which he seeks damages. SAC ¶¶ 5, 14, 34. Mr. Mack's September 5, 2026 letter responding to this lawsuit is not a forum contact. SAC ¶ 173.

### 3. An alleged conspiracy with a Texas official does not supply jurisdiction.

Plaintiff's relatedness theory is that the CSPOA Defendants should answer in Texas for what Henderson did. A plaintiff must show that each nonresident defendant "individually, and not as part of the conspiracy, had minimum contacts with Texas." *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) (per curiam). The Supreme Court of Texas likewise "decline[s] to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the

effects or consequences of an alleged conspiracy with a resident in the forum state." *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995). Each defendant's contacts must be assessed individually, as Plaintiff acknowledges. SAC ¶ 9 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). The Court need not credit conclusory jurisdictional allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

#### 4. Jurisdictional discovery is not warranted.

The party requesting jurisdictional discovery bears "the burden of demonstrating the necessity of discovery," and is not entitled to it when "the requested discovery is not likely to produce the facts needed" to establish jurisdiction. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (cleaned up). Plaintiff asks for communications, contracts, and payments between MCSO and CSPOA concerning training from 2015 through 2024, TCOLE files and rosters, and the 2021 seminar materials. Doc. 35 at 21. That would only document more training and appearances that, by Plaintiff's own account, preceded the conduct he sues on. More evidence of unrelated contacts cannot establish relatedness. *Bristol-Myers*, 582 U.S. at 264. The request should be denied.

### F. The Court should decline Plaintiff's requested Rule 11 rulings and should decide Doc. 27.

Plaintiff asks the Court to "note" that his withdrawal of Count VII "satisfies Rule 11(c)(2)" and that the Rule "did not require" him to dismiss the CSPOA

Defendants. Doc. 35 at 21-22. No Rule 11 motion is before the Court. Rule 11(c)(2) bars filing a sanctions motion if the challenged "paper, claim, defense, contention, or denial is withdrawn or appropriately corrected" within twenty-one days after service of the motion. Whether the SAC "appropriately correct[s]" the factual contentions the motion challenges, including the contention that the CSPOA Defendants agreed with Henderson to deprive Plaintiff of his rights, is a question the Court can decide if and when a motion is filed. An anticipatory ruling now would be advisory, and the CSPOA Defendants reserve all rights under Rule 11 and 42 U.S.C. § 1988(b).

Plaintiff also calls counsel's safe-harbor offer an effort "to exact an unjust settlement." Doc. 35 at 7-8. Offering a chance to dismiss a defective claim before a sanctions motion is filed is what Rule 11(c)(2) contemplates, and one of the two offered alternatives required no payment. *Id.* at 4. The letter is inadmissible on the validity of the claim, Fed. R. Evid. 408(a), and irrelevant to leave.

Finally, the Court should not deny Doc. 27 as moot. Count VII was the only claim the operative FAC asserted against the CSPOA Defendants. Doc. 35 at 3. Plaintiff has withdrawn it with a promise not to "later advocate" it. *Id.* at 8. If leave is denied as to the CSPOA Defendants, nothing remains pending against them, and the Court should grant Doc. 27. Plaintiff's withdrawal does not deprive the CSPOA Defendants of prevailing-party status. A defendant "need not obtain a favorable

judgment on the merits in order to be a 'prevailing party.'" *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431 (2016). And in this Circuit a defendant prevails after a voluntary withdrawal when "the plaintiff withdrew to avoid a disfavorable judgment on the merits." *Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001). Plaintiff withdrew Count VII six days after the CSPOA Defendants moved to dismiss it and served a Rule 11 motion, and he says he did so "to cure the defects Defendants allege." Doc. 35 at 1. The CSPOA Defendants' request for fees under § 1988(b), Doc. 27 at 13-16, should be preserved for determination under Rule 54(d)(2).

## VII. CONCLUSION AND PRAYER

For these reasons, Defendants Constitutional Sheriffs and Peace Officers Association, Inc. and Richard Mack respectfully ask the Court to:

(a) deny Plaintiff's Motion for Leave (Doc. 35) as futile insofar as the proposed Second Amended Complaint asserts any claim against CSPOA or Mr. Mack, including Counts IV, V, and VII;

(b) deny Plaintiff's alternative request for jurisdictional discovery;

(c) decline Plaintiff's requests that the Court make findings or notations concerning Rule 11(c)(2);

(d) grant the CSPOA Defendants' Motion to Dismiss (Doc. 27) and dismiss all claims against CSPOA and Mr. Mack with prejudice under Rule 12(b)(6) or, if the Court resolves the motion on jurisdictional grounds,

without prejudice under Rule 12(b)(2), in either event preserving their request for attorney's fees under 42 U.S.C. § 1988(b) for determination under Rule 54(d)(2);

(e) in the alternative, if the Court grants leave as to the CSPOA Defendants, order that their objection to personal jurisdiction is preserved and that they may respond to the Second Amended Complaint within the time Rule 15(a)(3) provides; and

(f) grant the CSPOA Defendants all other relief to which they are entitled.

Respectfully submitted,

*/s/ C.J. Grisham*
C.J. Grisham
State Bar No. 24124533
S.D. Tex. Bar No. 24124533
cj@gfalaw.us
GFA Law, PLLC
3809 S. General Bruce Dr.,
Suite 103-101
Temple, Texas 76502
Telephone: 254-405-1726

**COUNSEL FOR DEFENDANTS CONSTITUTIONAL SHERIFFS AND PEACE OFFICERS ASSOCIATION, INC. AND RICHARD MACK**

## CERTIFICATE OF WORD COUNT

Under Section 16(c) of the Court's Procedures, I certify that this response contains 4922 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates, according to the word count of the word-processing system used to prepare it.

*/s/ C.J. Grisham*
C.J. Grisham

## CERTIFICATE OF SERVICE

I certify that on November 3, 2026, I filed the foregoing through the Court's CM/ECF system, which will send notice to all counsel of record. I further certify that on the same date I served a copy on Plaintiff Joseph Aaron Caldarera, *pro se*, by email to lt.caldarera@gmail.com.

*/s/ C.J. Grisham*
C.J. Grisham