United States Courts
Southern District of Texas
FILED
NOV 20 2026
Nathan Ochsner, Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSEPH AARON CALDARERA,<br>Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:26-cv-04110 |
| | § | |
| CONSTITUTIONAL SHERIFFS AND PEACE OFFICERS ASSOCIATION, INC., *et al.*,<br>Defendants. | §<br>§<br>§<br>§ | Judge Nicholas J. Ganjei |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS MONTGOMERY COUNTY AND SHERIFF DOOLITTLE IN HIS OFFICIAL CAPACITY (DKT. 36)**

Plaintiff Joseph Aaron Caldarera, proceeding *pro se*, responds to the Motion to Dismiss filed by Defendants Montgomery County and Sheriff Wesley Doolittle in his official capacity (together, the "County") (Dkt. 36). The motion is directed to the First Amended Complaint ("FAC"), which Plaintiff moved to replace one day before the Defendants' motion was filed. Plaintiff asks the Court to grant his Motion for Leave to File Second Amended Complaint (Dkt. 35) and deny this motion as moot. In the alternative, Plaintiff asks the Court to deny the motion as to the claims arising from the County's May 23, 2024 decision and to dismiss any remaining claim without prejudice and with leave to amend. Lettered exhibits are those to the SAC; numbered exhibits are attached to this response.

# I. NATURE AND STAGE OF THE PROCEEDING

This is a civil-rights action under 42 U.S.C. § 1983 with supplemental claims under Texas law. Plaintiff filed suit on May 22, 2026 (Dkt. 1) and filed the FAC on August 20, 2026 (Dkt. 6). On October 29, 2026, Plaintiff moved for leave to file a Second Amended Complaint ("SAC") (Dkt. 35) and responded to Defendants Henderson and Inmon's motion to dismiss (Dkt. 34). The next day, October 30, 2026, the County filed this motion against the FAC (Dkt. 36), and Defendant Williams filed a motion adopting Dkt. 10 (Dkt. 37). The County opposes leave (Dkt. 38). The deadline to move for leave to amend is January 21, 2027 (Dkt. 28). No discovery has occurred.

# II. STATEMENT OF FACTS

## A.Facts the motion does not dispute

1. Henderson was Montgomery County's final policymaker for law enforcement. Dkt. 36 at 18–19 (citing *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990)); SAC ¶¶ 29, 52.
2. Henderson, as Sheriff or as a candidate, stated that he did not believe a sheriff was required to enforce laws he deemed unconstitutional. Dkt. 36 at 7 ¶ 11.
3. On May 23, 2024, Henderson's office declined to act on Plaintiff's complaint against Deputies Williams and Inmon. Dkt. 36 at 7 ¶ 14; SAC ¶¶ 157–158. Suit was filed within two years of that date. Dkt. 1.

4. The County and Sheriff Doolittle in his official capacity are the same party for purposes of this motion. Dkt. 36 at 9. Plaintiff agrees.

**B.Facts pleaded in the proposed SAC**

Henderson, as an MCSO captain, was listed as a signer of a CSPOA resolution in October 2015; as a candidate in 2016 he accepted Richard Mack's endorsement and promised to use Mack as an "expert advisor and resource"; and in February 2021, at a training CSPOA and MCSO co-presented, he described applying "what I have been taught" by Mack to MCSO's enforcement decisions and endorsed reaching people through "subterfuge." SAC ¶¶ 10–13, 48, 54, 57–59. TCOLE later found that CSPOA's Texas training taught that sheriffs "have a duty to interpose" against state agents and that "unjust laws" are "nullities." SAC ¶¶ 43–46, Ex. A.

In February 2021, after Plaintiff's brother Christian struck him in the face, the deputies recorded Plaintiff's split lip and cut and no injury to Christian's face or head, and arrested Plaintiff on Christian's account. SAC ¶¶ 62–65, 70–78. A 2019 family-violence citation that MCSO's own records show was Christian's was later treated as Plaintiff's history and reached the Texas Education Agency, which suspended Plaintiff's teaching certificates. SAC ¶¶ 139–148, 214–218; Exs. K, L; Ex. 2. Plaintiff filed a sworn, documented complaint with MCSO in November 2023. SAC ¶¶ 155–156. On May 23, 2024, Henderson's office closed it, with MCSO's contrary records before it. SAC ¶¶ 157–159.

## III. STATEMENT OF THE ISSUES

1. Whether a motion directed to a pleading that Plaintiff had already moved to replace should be denied as moot once leave is granted.
2. Whether a pleading may be dismissed as "scantily pleaded" when the motion identifies no missing fact.
3. Whether allegations corroborated by the findings of a state investigative agency, and by Defendants' own published statements, are implausible.
4. Whether limitations bars claims arising from the County's May 23, 2024 decision.
5. Whether the SAC plausibly pleads equal-protection, stigma-plus, and municipal-liability claims and state tort claims under applicable tolling doctrines.
6. Whether, in the alternative, any dismissal should be without prejudice and with leave to amend.

## IV. STANDARD OF REVIEW

A complaint survives a Rule 12(b)(6) motion if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "does not impose a probability requirement at the pleading stage," and a well-pleaded complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.* at 556. The motion's formulation, that dismissal is proper when a claimant cannot "prove any facts" entitling him to relief (Dkt. 36 at 8),

restates the "no set of facts" standard that *Twombly* retired. *Id.* at 562–63. The Court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Exhibits attached to a pleading are part of it. Fed. R. Civ. P. 10(c). A *pro se* complaint is liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Dismissal on limitations grounds is proper only when "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff brings suit in *uberrima fides*.

## V. ARGUMENT

The plausibility question is narrower than the motion suggests. On February 3, 2021, Plaintiff's brother Christian struck him twice in the face with closed fists, splitting his lip and cutting him between the eyes. SAC ¶ 62. The deputies photographed and recorded those injuries, recorded none to Christian's face or head and only scratches and scrapes on Christian's hands, and yet reported that Plaintiff had thrown "two closed-fist punches" to Christian's head. SAC ¶¶ 70–77. County records then attributed to Plaintiff a 2019 Montgomery County family-violence record that MCSO's own records show was Christian's. SAC ¶¶ 139–148; Exs. K, L; Ex. 2. TEA relied on it. Its petition and sanction found that Plaintiff "has a pattern of violent behavior," and his educator certificates were

TCOLE reviewed, "The County Sheriff: America's Last Hope," is the course CSPOA and MCSO co-presented in The Woodlands in February 2021. SAC ¶¶ 19, 54; Exs. V, Y. The SAC states candidly that TCOLE did not identify the Woodlands event, and it pleads the connection on information and belief, with discovery likely to supply further support. SAC ¶ 45; Fed. R. Civ. P. 11(b)(3). Plausibility requires no more.

These findings are facially plausible, and they make the allegations that rest on them plausible. They are admissible at trial as "factual findings from a legally authorized investigation," Fed. R. Evid. 803(8)(A)(iii), including the conclusions drawn from them, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). Rule 803(8) presumes such findings trustworthy and places on the opponent the burden to show "that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). The statements TCOLE quotes are CSPOA's own, offered to show what was taught. Fed. R. Evid. 801(c), 801(d)(2), 805. The County has not challenged the findings' trustworthiness. To hold that allegations corroborated by them are implausible would discount, at the pleading stage, evidence the County could not exclude at trial without carrying its burden under Rule 803(8)(B), and would weigh evidence, which Rule 12(b)(6) does not permit. Plaintiff does not ask the Court to find the findings true. He asks only that allegations resting on them be treated as what they are: plausible.

**D.The County's argument that Plaintiff draws no "plausible connection" to CSPOA or Henderson's statements fails.**

The motion asserts that Plaintiff "does not draw any plausible connection between his arrest and the CSPOA, the CSPOA speaker, or Henderson's statements." Dkt. 36 at 20. The doctrine was not hidden. Its authors published it. CSPOA and MCSO co-presented the February 2021 training, with registration through cspoa.org. SAC ¶¶ 15, 54; Exs. V, W. CSPOA recorded the event and published it on its YouTube channel as an 18-video playlist, including Henderson's session. SAC ¶ 17; Ex. Y. In that recorded session, Henderson, as Sheriff, described "the 'Rosa Park Effect,'" said that reaching a person because of their protected status through another charge is "just a matter of subterfuge," credited Mack, and said, "we've learned a lot as to how to **apply** this." SAC ¶¶ 54, 57; Ex. Z; Ex. Y, Video 02. Mack invited NBC 5 to a CSPOA training for county judges, broadcast in January 2023. SAC ¶ 20; Ex. DD. And CSPOA told Texas officers, "This is a war." SAC ¶ 45(a); Ex. A.

A policy that its maker announced, recorded, and published is not implausible when pleaded. Henderson's statements are the County's final policymaker's own words. Offered against the County, they are not hearsay, Fed. R. Evid. 801(d)(2)(D), and they are the "contemporary statements by members of the decisionmaking body" from which purpose may be inferred. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977). The County may deny that the doctrine was applied to Plaintiff. That is

a factual dispute for discovery. It is not a ground for treating as implausible a doctrine the County's own policymaker publicly described.

The direction of the relationship matters. Henderson said he had been through "the vetting process with Sheriff Mack" and "went back to what I've been taught by sheriff Mack" in deciding how MCSO would enforce the law. SAC ¶ 57. The County's chief law-enforcement officer submitted to vetting by a private organization's founder, not the reverse. The SAC thus pleads that the County outsourced the constitutional training of its officers to CSPOA and adopted CSPOA's doctrine of interposition and nullification as policy, SAC ¶¶ 48–59, and that Mack came to Montgomery County to deliver it, SAC ¶¶ 15–18, 54. That doctrine teaches a duty to interpose, an officer's authority to declare laws void, and resistance to "any government" deemed tyrannical. Part C, *supra*. TCOLE's findings tie it to the Fifth Circuit's warning against defiance of the rule of law by state and local officers. Ex. A n.6 (citing *United States v. City of Jackson*, 318 F.2d 1, 17 (5th Cir. 1963)). "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." *Cooper v. Aaron*, 358 U.S. 1, 18 (1958). The Constitution "looks to an indestructible Union, composed of indestructible States." *Texas v. White*, 74 U.S. (7 Wall.) 700, 725 (1869). A final policymaker's adoption of a doctrine of nullification is the deliberate choice *Monell* reaches. *Pembaur*, 475 U.S. at 483. This case, as pleaded, is what happens when that doctrine is put into practice: protection withheld, recorded injuries disregarded, another

man's record attributed to Plaintiff, and his complaint closed. SAC ¶¶ 70–78, 139–148, 155–159, 191.

**E.The County's argument that the officers "believed the victims" supplies an innocent explanation fails.**

Only Plaintiff's well-pleaded facts are taken as true, and reasonable inferences are drawn in his favor. *Iqbal*, 556 U.S. at 678. The County's explanations, that the deputies "believed the victims" (Dkt. 36 at 16) or faced a "differing characterization" (*id.* at 17), are argument, not facts entitled to that presumption. The SAC pleads that the policy itself is one of subterfuge: a facially neutral basis for official action that conceals its true object. SAC ¶ 58; *see United Air Lines, Inc. v. McMann*, 434 U.S. 192, 203 (1977). Where the pleaded policy works through pretext, a facially neutral explanation is not an "obvious alternative explanation" that defeats plausibility, *cf. Iqbal*, 556 U.S. at 682; it is the form the pleaded policy predicts. A lawful pretext does not answer a claim of selective enforcement, which arises under the Equal Protection Clause. *Whren v. United States*, 517 U.S. 806, 813 (1996). Choosing between the County's explanation and Plaintiff's is for the fact finder.

**F.The County's argument that "all claims stem from the February 3, 2021 arrest" and are time-barred fails.**

The SAC's federal claims against the County arise from the May 23, 2024 decision. The 2021 events are pleaded as the prior wrong from which protection was sought and as evidence of the policy, not as separate claims. SAC ¶¶ 5, 60, 175, 180–184. Section 1983 claims in Texas borrow the two-year personal-injury period, and a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). "Each discrete discriminatory act starts a new clock." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Counts I, II, and IX arise from the May 23, 2024 decision. SAC ¶ 175. Plaintiff sued on May 22, 2026. The motion's limitations chart runs every period from 2021–2023 events and never addresses the May 23, 2024 decision. Dkt. 36 at 9–10.

Nor did Plaintiff "merely ask[] the defendant to correct its record." Dkt. 36 at 11. He filed a sworn complaint, with supporting records, reporting crimes by MCSO deputies to the office that employs them, and the County's final policymaker made a new decision to take no action with MCSO's own contrary records before him. SAC ¶¶ 155–159, 183–184. *Rushing v. Yazoo County*, 861 F. App'x 544 (5th Cir. 2021), is unpublished and not precedent, 5th Cir. R. 47.5.4, and it addressed the "delayed, but inevitable, consequence" of a prior act. The May 23, 2024 decision was not inevitable; it was a new choice on a

new complaint. In 2021, Plaintiff knew he had been wrongly arrested; he could not have known that he would be denied the protection of the law, because that denial had not yet occurred. SAC ¶ 182.

Count III (stigma-plus) accrued no earlier than November 2024, when Plaintiff learned that the false history had been conveyed to TEA, and to the extent it seeks prospective relief, it targets an ongoing violation: the continued maintenance of the false record without a name-clearing hearing. SAC ¶¶ 176, 220, 222. A bar is not "evident from the plaintiff's pleadings." *Jones*, 339 F.3d at 366.

**G.The County's argument that "Caldarera admits he struck his brother and mother" fails.**

Dkt. 36 at 5, 13, 19. The SAC pleads that Christian struck Plaintiff twice in the face, pursued him, and took the phone as he tried to call 911; that Plaintiff threw nearby objects while fleeing to complete the call; and that any risk to his mother was created by Christian's assault. SAC ¶¶ 62–65. Plaintiff has never admitted being the aggressor, and the motion cannot obtain dismissal by attributing to him an admission he did not make. *Iqbal*, 556 U.S. at 678.

Liability under *Monell* is not vicarious, as the motion describes it (Dkt. 36 at 18); it rests on the County's own policy.

**L.In the alternative, any dismissal should be without prejudice and with leave to amend.**

If the Court reaches the merits of the FAC and finds any claim deficient, dismissal should be without prejudice and with leave to amend. The defects the motion identifies concern the specificity of the facts pleaded, not a legal bar that no amendment could cure. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009).

Plaintiff also gives notice that he intends to seek leave to file a Third Amended Complaint before the January 21, 2027 deadline. Defendant Mack's recent book, Daniel Perkins & Richard Mack, *The Democrat Murder of America: Demagoguery in the First Degree* (Mac&D Publishing 2026) (excerpts attached as Ex. 3), contains statements bearing on knowledge and intent, which are essential elements of the conspiracy and equal-protection claims, and which the SAC does not plead. In it, Mack describes the February 2021 Woodlands conference, attended by more than 200 officers "mostly from Texas," *id.* at 224–25; recounts telling attendees, of the Supreme Court, "Sometimes we need to go against them," and that stopping an enforcement action "usually . . . just takes a phone call," *id.* at 225–26; and writes that no officer "has any sort of obligation to enforce" a law the officer deems "unjust or unconstitutional," *id.* at 200–01. Plaintiff

obtained the book on November 7, 2026. In plaintiff's own words - this publication can be classified as seditious libel - and this Court should be availed of its contents in the proper motion before ruling in the Defendants' favor. Because the amendment deadline has not passed, leave is governed by Rule 15(a)(2), under which it should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman*, 371 U.S. at 182.

## VI. CONCLUSION

Plaintiff asks the Court to grant his Motion for Leave to File Second Amended Complaint (Dkt. 35) and deny the County's Motion to Dismiss (Dkt. 36) as moot; or, in the alternative, to deny the motion as to the claims arising from the May 23, 2024 decision and to dismiss any other claim without prejudice and with leave to amend.

Dated: November 20, 2026

Respectfully submitted,

/s/ Joseph Aaron Caldarera
Joseph Aaron Caldarera, *Pro Se*
10680 Westbrae Pkwy, P301
Houston, Texas 77031
(936) 510-3221
lt.caldarera@gmail.com

## CERTIFICATE OF WORD COUNT

Under Section 16(c) of the Court's Procedures, I certify that this response contains 4,892 words, excluding the caption, signature block, and certificates, as counted by my word-processing software.

/s/ Joseph Aaron Caldarera

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

Artificial intelligence was used for researching, outlining, drafting, and editing this document. I have reviewed the document and verified its factual assertions and legal citations, and I am responsible for its contents under Rule 11 of the Federal Rules of Civil Procedure.

/s/ Joseph Aaron Caldarera

## CERTIFICATE OF SERVICE

I certify that on November 20, 2026, I served this document on all counsel of record, including Daniel Plake and Christopher J. Grisham, through the Court's CM/ECF system and by email to each.

/s/ Joseph Aaron Caldarera